IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES FAULKNER and KYM
FAULKNER, in their Individual Capacity
and as Parents and Next Friends of J.F.,
a Minor Child,

          Plaintiffs,

v.                                                          No. CV 15-852 CG/LAM

NEW MEXICO CHILDREN, YOUTH
AND FAMILIES DEPARTMENT, YOLANDA
DEINES, RICHARD GLASCOE, JODI L.
KIRKPATRICK, HEATHER BROWN ELLIS,
MARSHA BUESGUENS, JACKIE BURNS, and
STACY GLEATON,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court upon Defendant Richard Glascoe's *Motion to Dismiss First Amended Complaint for Damages and Memorandum in Support Thereof* ("Motion"), (Doc. 6), filed September 30, 2015; *Plaintiffs' Response in Opposition to Defendant Richard Glascoe's 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint* ("Response"), (Doc. 13), filed October 14, 2015; and Defendant Glascoe's *Reply in Support of Richard Glascoe's Motion to Dismiss First Amended Complaint for Damages* ("Reply"), (Doc. 23), filed November 9, 2015. After reviewing the briefs, the Court denies Defendant's Motion to Dismiss.

I.       **Factual Allegations**[1]

This case was filed by Plaintiffs James and Kym Faulkner on behalf of their

---

[1] At this stage of the proceedings, the Court takes all factual allegations in the Complaint as true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

minor child, J.F., after he allegedly suffered serious and disturbing abuse at the hands of his foster parents while in foster care. The facts are alleged as follows: Defendants Richard Glascoe and Jodi L. Kirkpatrick (the "Glascoe Defendants") were approved and certified by the New Mexico Children Youth and Families Department ("CYFD") to provide foster care and placement for minor children in the custody of CYFD. (Doc. 1-1 at 2 ¶ 7). J.F. came in to the custody of CYFD before he was three years old, (*Id.* at 2 ¶ 2, 4 ¶19), and was involuntarily placed in the Glascoe Defendants' custody by CYFD for several periods of time between 2003 and 2006. (*Id.* at 4 ¶¶ 21–22, 8 ¶ 50). While J.F. was in the custody of the Glascoe Defendants, J.F. was subjected to severe sexual and emotional abuse at the hands of his foster parents. (*Id.* at 5 ¶ 29, 6–7 ¶ 35). Plaintiffs allege that CYFD and its employees, who are named as individual defendants in this case, either knew, or should have known, of the danger presented by the Glascoe foster home. (*Id.* at 4 ¶ 23). At all relevant times, the Glascoe Defendants acted in their capacities as foster parents, as agents of CYFD under the foster parent license, and under the control of CYFD. (*Id.* at 2 ¶ 7).

Plaintiffs filed their *First Amended Complaint for Damages* ("Complaint"), (Doc. 1-1), on September 22, 2015 in the District Court of Santa Fe County, First Judicial District, State of New Mexico, alleging claims against several defendants. As is relevant here, Plaintiffs claim that Defendant Richard Glascoe ("Defendant") violated J.F.'s constitutional rights to bodily integrity and to be free from harm while in foster care. (Doc. 1-1 at 8–9). Plaintiffs additionally state that, as a result, J.F. suffered severe injuries and seek compensation for those injuries under 42 U.S.C. § 1983.

Thereafter, the case was removed to this Court on September 24, 2015. (Doc. 1). Defendant then filed his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In the Motion, Defendant argues that Plaintiffs' Complaint fails to state a claim upon which relief can be granted because, as a foster parent, Defendant did not act under color of state law for purposes of 42 U.S.C. § 1983. (Doc. 6). On this ground, Defendant asks the Court to dismiss the Complaint with prejudice.

## II. Standard of Review

The Federal Rules of Civil Procedure provide that a complaint must contain a "short and plain" statement of: (1) the ground supporting the court's jurisdiction; (2) the claim showing that the plaintiff is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). A defendant may move the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain allegations of fact that, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citations omitted). While the court must accept as true all of the allegations in the complaint, the court need not grant the same deference to conclusory statements. *Iqbal*, 556 U.S. at 678. Moreover, "a formulaic recitation of the elements of a cause of action" will not suffice to state a claim. *Twombly*, 550 U.S. at 555. Dismissal

3

with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

**III.    Analysis**

In his Motion, Defendant argues that, accepting the allegations in the Complaint as true, he did not act under color of state law. Defendant contends that acting as a foster parent licensed by the State of New Mexico is insufficient to render him a state actor for purposes of § 1983. In support, Defendant cites to several cases from other jurisdictions for the proposition that, in the absence of allegations that the state knew of or participated in abuse perpetrated by a foster parent, the actions of the foster parent do not constitute state action.

Plaintiffs respond that the State of New Mexico maintains extensive control over foster homes through a detailed regulatory framework and that foster parents are included as "public employees" under the New Mexico Tort Claims Act ("NMTCA"). Given the State's regulations of foster homes, and the fact that the State has accepted responsibility for a foster parent's actions, Plaintiffs argue that there is a sufficient nexus and entwinement between the State and foster parents to render New Mexico foster parents state actors.

*A.  Section 1983 and Acting Under Color of State Law*

A civil rights action under 42 U.S.C. § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws." 42 U.S.C. § 1983 (1996). Thus, to state a claim under § 1983, an injured person must allege a violation of a federally protected right, and must show that the alleged deprivation was committed by an individual acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The requirement that an individual act under color of state law is "a jurisdictional requisite for a § 1983 action." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Determining whether certain conduct constitutes state action "has been characterized as 'one of the more slippery and troublesome areas of civil rights litigation.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citing *International Soc'y for Krishna Consciousness, Inc. v. Air Canada,* 727 F.2d 253, 255 (2d Cir.1984) (per curiam)). As a result, the Court of Appeals for the Tenth Circuit "has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." *Id.*

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Herrera v. Santa Fe Pub. Sch.*, 41 F. Supp. 3d 1027, 1141–42 (D.N.M. 2014) (citing *West*, 487 U.S. at 49). A defendant's authority may be either actual or apparent. *Jojola*, 55 F.3d at 493 (internal citations omitted). This inquiry can vary depending on the specific facts of a case. Indeed,

> [i]n some instances, the Court has considered "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." The Court has also inquired whether the state has "so far insinuated itself into a position of interdependence" with the private party that there is a "symbiotic relationship" between them. In addition, the

5

> Court has held that if a private party is a "willful participant in joint activity with the State or its agents," then state action is present. Finally, the Court has ruled that a private entity that exercises "powers traditionally exclusively reserved to the State" is engaged in state action.

*Johnson v. Rodrigues*, 293 F.3d 1196, 1202–03 (10th Cir. 2002) (citing *Gallagher*, 49 F.3d at 1447). In each instance, however, "the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the state." *Id.* at 1203 (internal quotations omitted).

Where a defendant is a public employee, "the Supreme Court has noted 'state employment is generally sufficient to render the defendant a state actor.'" *Jojola*, 55 F.3d at 493 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935–36 n.18 (1982)). At the same time, "it is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" *Id.* (citing *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1150 (3d Cir. 1995)). As a result, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Id.* (internal citations omitted).

Whether there is "a real nexus" between a public employee's alleged misconduct and his authority as a state employee depends on the circumstances in a particular case. *Herrera*, 41 F. Supp. 3d at 1142. "The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty. Instead one must examine 'the nature and circumstances of the officer's conduct and the

relationship to that conduct to the performance of his official duties.'" *Id.* (citing *David v. City & County of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996)).

With these general principles in mind, the Court turns to whether foster parents licensed by the State of New Mexico are state actors for purposes of § 1983.

### B. <u>Whether Foster Parents Are State Actors in New Mexico</u>

Here, Plaintiffs allege the following facts. Defendant was approved and certified by CYFD to provide foster care and placement to minor children in the custody of CYFD. (Doc. 1-1 at 2 ¶ 7). J.F. came in to the custody of CYFD before he was three years old, (*Id.* at 2 ¶ 2, 4 ¶19), and was involuntarily placed in Defendant's custody by CYFD for several periods of time between 2003 and 2006. (*Id.* at 4 ¶¶ 21–22, 8 ¶ 50). While J.F. was in the custody of Defendant, J.F. was subjected to severe sexual and emotional abuse at the hands of Defendant. (*Id.* at 5 ¶ 29, 6–7 ¶ 35). Plaintiffs allege that CYFD and its employees either knew, or should have known, of the danger presented by the Glascoe foster home. (*Id.* at 4 ¶ 23). At all relevant times, Defendant acted in his capacity as a foster parent, as an agent of CYFD under the foster parent license, and under the control of CYFD. (*Id.* at 2 ¶ 7).

In his Motion, Defendant argues that the facts, as alleged in the Complaint, do not plausibly state that Defendant was acting under color of state law to support a claim under § 1983. Defendant contends that acting as a foster parent licensed by the State of New Mexico is insufficient to render him a state actor. In support, Defendant cites to several cases from other jurisdictions for the proposition that, in the absence of allegations that the state knew of or participated in abuse perpetrated by a foster parent, the actions of the foster parent do not constitute state action.

However, as this District has previously explained, "[t]he question here . . . is whether [Defendant Glascoe was] acting under the color of New Mexico law, not under the color of some other state's law." *Bailey v. Pacheco, et al*, No. CIV 96-959 LH/DJS, at *7 (D.N.M. filed Apr. 3, 1998) (unpublished). Thus, the Court will consider whether a foster parent acts under color of state law as it currently stands in New Mexico.

*1. The Status of Foster Parents Under New Mexico Law*

In New Mexico, a "foster parent" is a "person . . . licensed or certified by the [CYFD] . . . to provide care for children in the custody of [CYFD]." NMSA 1978 § 32A-1-4(H). The Tenth Circuit has recognized that "New Mexico regulations make clear that, although foster parents are private citizens, they play a public role when they take in foster children." *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1140 (10th Cir. 2006). A foster parent acts as a member of the child's case management team, participating in the development and implementation of team plans for the child, but does not make independent plans for children in their care. *Id.*; NMAC § 8.26.2.12(A). Rather, the foster parent cooperates with and carries out the state's plans, with the state controlling the day-to-day parenting in foster homes. *Id.*; NMAC §§ 8.26.2.17(A), 8.26.4.13. Because foster parents are screened, trained, studied, approved, and licensed by the state, the Tenth Circuit has also commented that "[s]tate regulations suggest that foster parents are effectively state officials, at least for some purposes." *Id.* at n.4 (citing NMSA 1978 §§ 32A-1-4(G); 40-7A-4(B)).

In addition, pursuant to the NMTCA, "licensed foster parents [who] provide care for children in the custody of the human services department" are considered "public employees." NMSA 1978 § 41-4-3(F)(4). As stated above, state employment is

8

generally sufficient to render the defendant a state actor. *Jojola*, 55 F.3d at 493. It is not disputed that Defendant is considered a "public employee" under the NMTCA. (*See* Doc. 23 at 4). Rather, Defendant argues that Plaintiffs have not alleged claims against him under the NMTCA, only under § 1983, and state law definitions do not dictate federal court decisions. Defendant further argues that courts in other jurisdictions have held that state law designation of a foster parent as a public employee is not enough to establish state action. Again, the question here is whether foster parents act under color of New Mexico law, not the law of other states.

Under the NMTCA, the state pays any settlement or final judgment entered against a public employee for his or her violation of an individual's constitutional rights while acting within the scope of his or her duty.[2] Thus, as a public employee, a foster parent's unconstitutional acts are indemnified by the state. This District has noted that, as a result, "the conduct of a foster parent acting within the scope of [his] duty is that of 'a person for whom the state is responsible.'" *Johnson, et al v. Holmes, et al*, No. CIV-02-1239 JB/KBM, at *16 (D.N.M. filed Apr. 7, 2004) (unpublished) (citing *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996)). "Thus, a good case could be made that, under New Mexico law, the state has obligated itself to pay any damages [arising from] a foster parent's physical abuse of a foster child . . . [resulting] in a constitutional violation, by virtue of the foster parent's public employment." *Id.* This is not to say that New

---

[2] Specifically, the NMTCA provides:

> A governmental entity shall pay any settlement or any final judgment entered against a public employee for:
>
> a violation of . . . any rights, privileges, or immunities secured by the constitution and the laws of the United States . . . that occurred while the public employee was acting within the scope of his duty.

NMSA 1978 § 41-4-4(D)(2).

Mexico's designation of foster parents as public employees definitively decides the question of whether foster parents act under color of New Mexico state law for purposes of § 1983. Nevertheless, the Court finds it a significant factor to consider.

### 2. Caselaw Supports a Finding of State Action

Judges in the District of New Mexico have found "a real nexus" between a foster parent's misuse of state authority and the abuse of a child in his custody. *See Bailey*, No. CIV 96-959 LH/DJS; *G.Z. v. Hagloff, et al*, No. CIV 96-1373 MV/WD (D.N.M. Dec. 8, 1998) (unpublished).[3] In *Bailey*, the question before the Court was whether foster parents who had allegedly abused foster children placed in their care by the state were acting under color of state law. There, United States District Judge C. LeRoy Hansen considered the facts that the defendants were subject to extensive regulation by the state and were considered public employees under the NMTCA. No. CIV 96-959 LH/DJS, at *9–10. What Judge Hansen found most significant, however, was that the state had retained custody of the plaintiff and had selected the defendants to take physical custody of her and provide for her well-being against her will. *Id.* at *10. Based on these considerations, the Court found that the plaintiff had alleged a "real nexus" between the state-authority granted to the defendants and their alleged misconduct. *Id.* at *11. Ultimately, the question rested on the fact that "[i]f the state had not placed [the plaintiff] in the physical custody of [the defendants] and given [the defendants] the authority they purportedly exercised as foster parents, [the plaintiff] would not have suffered the horrific injuries alleged." *Id.*

---

[3] A copy of this Order is filed in the record within *Plaintiffs' Notice of Supplemental Authority that Defendants Glascoe and Kirkpatrick Were State Actors*, (Doc. 20), filed on November 5, 2015.

Similarly, in *G.Z.*, United States District Judge Martha Vazquez found a "real nexus" between the state-authority vested in foster parents and the defendants' alleged abuse of a foster child. Judge Vazquez also cited the extensive regulation and licensing of foster parents by CYFD to support her finding. No. CIV 96-1373 MV/WD, at *9. Presented with the facts that "the molestation of [the plaintiff] was undertaken by a foster father, acting as an agent for the State in caring for [the plaintiff], during the . . . time that [the plaintiff] was placed in the home," Judge Vazquez found the nexus "to be clear." *Id.* at *10. In his capacity as a foster parent, the defendant "misused a power which he possessed by virtue of state law and made possible only because he was clothed with the authority of the law." *Id.*

The Court finds these analyses of whether foster parents act under the color of New Mexico law to be persuasive, and their facts to be nearly indistinguishable from the case at bar. The Court believes that the level of regulation over foster homes in New Mexico, the fact that foster parents are considered "public employees" in New Mexico, and the fact that J.F. was involuntarily in the custody of the state, which placed him in Defendant's home, support a finding of state action. Similar to both *Bailey* and *GZ*, but for the authority granted to Defendant by the state, Defendant would not have had access to J.F. or been able to exercise complete control over J.F.'s upbringing while in his custody. Without this authority, Defendant would not have been in a position to perpetrate the abuses alleged in the Complaint.

Indeed, the facts as alleged in the Complaint fall squarely within the limits of state action as articulated by this Circuit. Although the Tenth Circuit has not directly addressed this issue, it has found state action in similar circumstances. In *Milonas v.*

11

*Williams*, the Court found that the owners and operators of the Provo Canyon School were acting under color of state law when implementing practices that had allegedly violated the plaintiffs' constitutional rights. 691 F.2d 931 (10th Cir. 1982). Despite the fact that Provo Canyon School was a private school that was not owned or operated by the state, the *Milonas* Court based its holding on the fact that many of the students were placed at the school involuntarily by juvenile courts and other state agencies, detailed contracts were drawn up by the school administrators and agreed to by many local state school districts that placed the boys at the school, the state significantly funded tuition at the school, and there was extensive state regulation of the education program at the school. *Id.* at 939–40.

In addition, this Circuit has made clear that "[w]here the defendant's state-derived authority places the defendant in a position of power over the plaintiff . . . and the defendant uses that power to improperly facilitate and commit the alleged unconstitutional conduct, the act is performed under color of state law." *Pena v. Greffet*, 922 F. Supp. 2d 1187, 1234 (D.N.M. 2013) (citing *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1304–05 (10th Cir. 2001); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1174–75 (10th Cir. 1997)).

Defendant's arguments to the contrary are unavailing. Defendant emphasizes that the Tenth Circuit has unequivocally stated that an otherwise private tort is not committed under color of state law simply because the tortfeasor is an employee of the state. Defendant points to *Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005) for the proposition that, where a person without state authority could have undertaken the same alleged unconstitutional conduct of which a plaintiff complains, those acts are not

12

committed under color of state law. *Id.* at 1074–75. This Court agrees with this principle, and believes that it supports a finding of state action in these circumstances.

In *Beedle*, the Tenth Circuit held that a nurse's aide employed by a hospital who sexually assaulted a patient while under heavy sedation was not acting under color of state law. The *Beedle* Court reasoned that, because the nurse's aide was not alleged to have sedated the patient herself, and because anyone in the hospital could have wandered into the patient's room and perpetrated the abuse, the nurse's aide was in no way exercising her "state-derived authority over [the patient]." *Id.* at 1074–75 (citing *Whitney*, 113 F.3d at 1174). As a result, the Court found there was no state action. *Id.* at 1075.

Here, it is clear that the sexual abuse committed by Defendant could not have been perpetrated by just "anyone," as the acts are alleged to have occurred during the time that Defendant was licensed as a foster parent by the State of New Mexico, and during the time that the state placed J.F. in Defendant's home. Indeed, but for the State's licensing of Defendant as a foster parent, granting him the responsibility to act as its agent in the care of J.F., and placing J.F. in his home, Defendant would not have had access to Plaintiff in order to perpetrate the abuse. *See G.Z.*, No. CIV 96-1373 MV/WD, at *10*. These circumstances demonstrate that Defendant misused a power which he possessed by virtue of state law and made possible only because he was clothed with the authority of that law. *Id.* (citing *West*, 487 U.S. at 49); *see Griffin*, 261 F.3d at 1304–05; *Whitney*, 113 F.3d at 1174–75 (10th Cir. 1997). Thus, the Court finds the facts here to be distinguishable from *Beedle*, and its underlying principles to support a finding of state action in this case.

Furthermore, the cases cited by Defendant from outside this Circuit do not lead the Court to a different result. The cases generally focus on the specific facts presented, including the relationship between the state social services agencies and the foster parents, and other facts not before this Court. *See e.g.*, *Milburn v. Ann Arundel County Dept. of Soc. Servs.*, 871 F.2d 474, 477 (4th Cir. 1989) (discussing applicable Maryland statutes, which provide only general guidelines for foster care and otherwise do not establish any kind of intimate relationship between the state and foster parents); *Walker v. Johnson*, 891 F. Supp. 1040, 1051 (M.D. Pa. 1995) (holding that state licensing and reimbursement of foster parents alone does not render foster parents state actors under § 1983); *Hawley v. Nelson*, 968 F. Supp. 1372, 1388 (E.D. Mo. 1997) *aff'd,* 141 F.3d 1168 (8th Cir. 1998) (stating that the defendants, simply by virtue of being foster parents, did not act under color of state law, where there were no allegations regarding the relationship between the foster parents and the state); *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990) (assuming, without deciding, that foster parents are not state agents for constitutional purposes even if paid by the state); *Howard v. Malac*, 270 F. Supp. 2d 132, 143–45 (D. Mass. 2003) (stating that, in Massachusetts, foster parents are relatively independent in the conduct of their day-to-day affairs and are considered private families who are parental substitutes); *Marr ex rel. Marr v. Schofield*, 307 F. Supp. 2d 130, 133–35 (D. Me. 2004) (holding that the fact that foster care in Maine is created by Maine statutes and regulations, foster parents receive payments from the state, and are governed by agency rules and regulations is not enough to render a foster parent a state actor without allegations that the state was a joint participant in the abuse) ; *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341,

1348–49 (11th Cir. 2001) (holding that Georgia's regulation of foster parents and the inclusion of foster parents as public employees under the Georgia Torts Claim Act insufficient to render foster parents state actors).

In sum, the Court concludes that, considering a foster parent's status under New Mexico law, New Mexico's extensive regulation of foster parents and foster homes, and the fact that the alleged abuse of J.F. would not have occurred but for Defendant's misuse of a power he possessed by virtue of the state, the Complaint alleges sufficient facts to suggest that Defendant acted under color of state law.

### IV. Conclusion

For the reasons discussed above, the Court finds that, taking all of Plaintiffs' allegations as true, Plaintiffs have established a real nexus between the authority CYFD granted Defendant as foster parent, and the constitutional violations Defendant is alleged to have committed. Thus, the Court concludes that Defendant was acting under color of state law when he allegedly caused the injuries suffered by J.F.

**IT IS THEREFORE ORDERED** that Defendant Richard Glascoe's *Motion to Dismiss First Amended Complaint for Damages and Memorandum in Support Thereof*, (Doc. 6), be **DENIED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE