## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JAMES FAULKNER and KYM
FAULKNER, in their Individual Capacity
and as Parents and Next Friends of J.F.,
a Minor Child,

        Plaintiffs,

v.                                    No. CV 15-852 CG/LAM

NEW MEXICO CHILDREN, YOUTH
AND FAMILIES DEPARTMENT, YOLANDA
DEINES, RICHARD GLASCOE, JODI L.
KIRKPATRICK, HEATHER BROWN ELLIS,
MARSHA BUESGUENS, JACKIE BURNS, and
STACY GLEATON,

        Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court upon Defendant Jodi L. Kirkpatrick's *Motion to Dismiss Plaintiffs' First Amended Complaint for Damages and Memorandum in Support Thereof* ("Motion"), (Doc. 9), filed October 1, 2015; *Plaintiffs' Response in Opposition to Defendant Jodi Kirkpatrick's 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint* ("Response"), (Doc. 14), filed October 15, 2015; and Defendant Kirkpatrick's *Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint for Damages [Doc. 9]* ("Reply"), (Doc. 19), filed November 5, 2015. After reviewing the briefs, the Court finds that Defendant's Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**.

### I.     Factual Allegations[1]

This case was filed by Plaintiffs James and Kym Faulkner on behalf of their

minor child, J.F., after he allegedly suffered serious and disturbing abuse at the hands

of his foster parents while in foster care. The facts are alleged as follows: Defendants

Richard Glascoe and Jodi L. Kirkpatrick (the "Glascoe Defendants") were approved and

certified by the New Mexico Children Youth and Families Department ("CYFD") to

provide foster care and placement for minor children in the custody of CYFD. (Doc. 1-1

at 2 ¶ 7). J.F. came in to the custody of CYFD before he was three years old, (*Id.* at 2 ¶

2, 4 ¶19), and was involuntarily placed in the Glascoe Defendants' custody by CYFD for

several periods of time between 2003 and 2006. (*Id.* at 4 ¶¶ 21–22, 8 ¶ 50). While J.F.

was in the custody of the Glascoe Defendants, J.F. was subjected to severe sexual and

emotional abuse at the hands of his foster parents. (*Id.* at 5 ¶ 29, 6–7 ¶ 35). Plaintiffs

allege that CYFD and its employees, who are named as individual defendants in this

case, either knew, or should have known, of the danger presented by the Glascoe foster

home. (*Id.* at 4 ¶ 23). At all relevant times, the Glascoe Defendants acted in their

capacities as foster parents, as agents of CYFD under the foster parent license, and

under the control of CYFD. (*Id.* at 2 ¶ 7).

Plaintiffs filed their *First Amended Complaint for Damages* ("Complaint"), (Doc.

1-1), on September 22, 2015 in the District Court of Santa Fe County, First Judicial

District, State of New Mexico ("State District Court"), alleging claims against several

defendants. As is relevant here, Plaintiffs claim that Defendant Jodi L. Kirkpatrick

("Defendant") violated J.F.'s constitutional rights to bodily integrity and to be free from

---

[1] At this stage of the proceedings, the Court takes all factual allegations in the Complaint as true.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

harm while in foster care. (Doc. 1-1 at 8–9). Plaintiffs additionally state that, as a result, J.F. suffered severe injuries and seek compensation for those injuries under 42 U.S.C. § 1983. Plaintiffs also allege negligence claims under the New Mexico Tort Claims Act for Defendant's failure to warn and to protect J.F. against the severe harm inflicted by her husband, Richard Glascoe, who is also a defendant in this case. (*Id.* at 9–10).

Thereafter, the case was removed to this Court on September 24, 2015. (Doc. 1). Defendant then filed her Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the Motion, Defendant argues that Plaintiffs' Complaint fails to state a claim upon which relief can be granted because, as a foster parent, Defendant did not act under color of state law for purposes of 42 U.S.C. § 1983. (Doc. 9). Further, even if Defendant could be considered a state actor under § 1983, Defendant contends that she is entitled to qualified immunity on Plaintiffs' constitutional claims. Finally, Defendant maintains that she is immune from Plaintiffs' negligence claims, and that those claims should also be dismissed.

## II.   Standard of Review

### A.  *12(b)(6) Motion to Dismiss*

The Federal Rules of Civil Procedure provide that a complaint must contain a "short and plain" statement of: (1) the ground supporting the court's jurisdiction; (2) the claim showing that the plaintiff is entitled to relief; and (3) a demand for the relief sought. FED. R. CIV. P. 8(a). A defendant may move the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain allegations of fact that, taken as true, "state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citations omitted). While the court must accept as true all of the allegations in the complaint, the court need not grant the same deference to conclusory statements.  *Iqbal*, 556 U.S. at 678. Moreover, "a formulaic recitation of the elements of a cause of action" will not suffice to state a claim. *Twombly*, 550 U.S. at 555. Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

### B. <u>Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is an entitlement not to stand trial or face the other burdens of litigation, and acts as an immunity from suit rather than a mere defense to liability. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (internal citations omitted).

Where a defendant raises the defense of qualified immunity, the court must determine whether the plaintiff has sufficiently alleged that: (1) the defendant's actions violated her constitutional or statutory rights; and (2) whether that right was clearly

established at the time of the alleged misconduct.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "If a plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). Thus, a court may consider either prong of the qualified immunity analysis.  *See Pearson*, 555 U.S. at 236.

### III.   Analysis

In her Motion, Defendant argues that, accepting the allegations in the Complaint as true, acting as a foster parent licensed by the State of New Mexico is insufficient to render her a state actor for purposes of § 1983. (Doc. 9 at 4–8). Defendant next contends that, even if this Court finds that Defendant acted under color of state law for purposes of § 1983, Defendant is entitled to qualified immunity. (*Id.* at 8). Finally, as to Plaintiffs' state negligence claims, Defendant contends that Defendant, as a public employee acting within the scope of her duties as a foster parent, is immune from liability under the New Mexico Tort Claims Act ("NMTCA"). (*Id.* at 10).

Plaintiffs respond that, given New Mexico's regulation of foster homes, and the fact that the State has accepted responsibility for a foster parent's actions, there is a sufficient nexus and entwinement between the State and foster parents to render New Mexico foster parents state actors. (Doc. 14 at 3–7).Plaintiffs also argue that Defendant is not entitled to qualified immunity because she violated J.F.'s clearly established constitutional right to be reasonably safe from harm by state officials. (Doc. 14 at 8–9). As to Plaintiffs' state negligence claims, Plaintiffs respond that this exact issue has already been decided by the State District Court prior to removal of this case, and that

this court found that Defendant had waived her immunity under the NMTCA. (*Id.* at 9–10). Pursuant to the law of the case doctrine, Plaintiffs argue that this Court is precluded from reconsidering the question of waiver of immunity under the NMTCA. (*Id.* at 10).

### A. *Plaintiffs' Constitutional Claims under Section 1983*

First, Defendant argues that, accepting the allegations in the Complaint as true, she did not act under color of state law. Defendant contends that acting as a foster parent licensed by the State of New Mexico is insufficient to render her a state actor for purposes of § 1983, citing to several cases from other jurisdictions in support.

Plaintiffs respond that the State of New Mexico maintains extensive control over foster homes through a detailed regulatory framework and that foster parents are included as "public employees" under the NMTCA. Given the State's regulations of foster homes, and the fact that the State has accepted responsibility for a foster parent's actions, Plaintiffs argue that there is a sufficient nexus and entwinement between the State and foster parents to render New Mexico foster parents state actors.

### 1. *Section 1983 and Acting Under Color of State Law*

A civil rights action under 42 U.S.C. § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1996). Thus, to state a claim under § 1983, an injured person must allege a violation of a federally protected right, and must show that the alleged deprivation was committed by an individual acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The requirement that an individual act under color of state law is "a jurisdictional requisite for a § 1983 action." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Determining whether certain conduct constitutes state action "has been characterized as 'one of the more slippery and troublesome areas of civil rights litigation.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citing *International Soc'y for Krishna Consciousness, Inc. v. Air Canada,* 727 F.2d 253, 255 (2d Cir.1984) (per curiam)). As a result, the Court of Appeals for the Tenth Circuit "has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." *Id.*

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Herrera v. Santa Fe Pub. Sch.*, 41 F. Supp. 3d 1027, 1141–42 (D.N.M. 2014) (citing *West*, 487 U.S. at 49). A defendant's authority may be either actual or apparent. *Jojola*, 55 F.3d at 493 (internal citations omitted). This inquiry can vary depending on the specific facts of a case. Indeed,

> [i]n some instances, the Court has considered "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." The Court has also inquired whether the state has "so far insinuated itself into a position of interdependence" with the private party that there is a "symbiotic relationship" between them. In addition, the Court has held that if a private party is a "willful participant in joint activity with the State or its agents," then state action is present. Finally, the Court has ruled that a private entity that exercises "powers traditionally exclusively reserved to the State" is engaged in state action.

*Johnson v. Rodrigues*, 293 F.3d 1196, 1202–03 (10th Cir. 2002) (citing *Gallagher*, 49 F.3d at 1447). In each instance, however, "the conduct allegedly causing the deprivation

of a federal right must be fairly attributable to the state." *Id.* at 1203 (internal quotations omitted).

Where a defendant is a public employee, "the Supreme Court has noted 'state employment is generally sufficient to render the defendant a state actor.'" *Jojola*, 55 F.3d at 493 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935–36 n.18 (1982)). At the same time, "it is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" *Id.* (citing *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1150 (3d Cir. 1995)). As a result, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Id.* (internal citations omitted).

Whether there is "a real nexus" between a public employee's alleged misconduct and his authority as a state employee depends on the circumstances in a particular case. *Herrera*, 41 F. Supp. 3d at 1142. "The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty. Instead one must examine 'the nature and circumstances of the officer's conduct and the relationship to that conduct to the performance of his official duties.'" *Id.* (citing *David v. City & County of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996)).

With these general principles in mind, the Court turns to whether foster parents licensed by the State of New Mexico are state actors for purposes of § 1983.

## 2. Whether Foster Parents Are State Actors in New Mexico

Here, Plaintiffs allege the following facts. Defendant was approved and certified by CYFD to provide foster care and placement to minor children in the custody of CYFD. (Doc. 1-1 at 2 ¶ 7). J.F. came in to the custody of CYFD before he was three years old, (*Id.* at 2 ¶ 2, 4 ¶19), and was involuntarily placed in Defendant's custody by CYFD for several periods of time between 2003 and 2006. (*Id.* at 4 ¶¶ 21–22, 8 ¶ 50). While J.F. was in the custody of Defendant, J.F. was subjected to severe sexual and emotional abuse at the hands of Defendant. (*Id.* at 5 ¶ 29, 6–7 ¶ 35). Plaintiffs allege that CYFD and its employees either knew, or should have known, of the danger presented by the Glascoe foster home. (*Id.* at 4 ¶ 23). At all relevant times, Defendant acted in her capacity as a foster parent, as an agent of CYFD under the foster parent license, and under the control of CYFD. (*Id.* at 2 ¶ 7).

Defendant argues that these facts do not plausibly state that Defendant was acting under color of state law to support a claim under § 1983. Defendant contends that acting as a foster parent licensed by the State of New Mexico is insufficient to render him a state actor. In support, Defendant cites to several cases from other jurisdictions for the proposition that, in the absence of allegations that the state knew of or participated in abuse perpetrated by a foster parent, the actions of the foster parent do not constitute state action.

However, as this District has previously explained, "[t]he question here . . . is whether [Defendant Glascoe was] acting under the color of New Mexico law, not under the color of some other state's law." *Bailey v. Pacheco, et al*, No. CIV 96-959 LH/DJS,

at *7 (D.N.M. filed Apr. 3, 1998) (unpublished). Thus, the Court will consider whether a foster parent acts under color of state law as it currently stands in New Mexico.

### a. The Status of Foster Parents Under New Mexico Law

In New Mexico, a "foster parent" is a "person . . .  licensed or certified by the [CYFD] . . . to provide care for children in the custody of [CYFD]." NMSA 1978 § 32A-1-4(H). The Tenth Circuit has recognized that "New Mexico regulations make clear that, although foster parents are private citizens, they play a public role when they take in foster children." *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1140 (10th Cir. 2006). A foster parent acts as a member of the child's case management team, participating in the development and implementation of team plans for the child, but does not make independent plans for a child in their care. *Id.*; NMAC § 8.26.2.12(A). Rather, the foster parent cooperates with and carries out the state's plans, with the state controlling the day-to-day parenting in foster homes. *Id.*; NMAC §§ 8.26.2.17(A), 8.26.4.13. Because foster parents are screened, trained, studied, approved, and licensed by the state, the Tenth Circuit has also commented that "[s]tate regulations suggest that foster parents are effectively state officials, at least for some purposes." *Id.* at n.4 (citing NMSA 1978 §§ 32A-1-4(G); 40-7A-4(B)).

In addition, pursuant to the NMTCA, "licensed foster parents [who] provide care for children in the custody of the human services department" are considered "public employees." NMSA 1978 § 41-4-3(F)(4). As stated above, state employment is generally sufficient to render the defendant a state actor. *Jojola*, 55 F.3d at 493. It is not disputed that Defendant is considered a "public employee" under the NMTCA. (*See* Doc. 23 at 4). Rather, Defendant argues that state law definitions do not dictate federal

court decisions. Defendant further argues that courts in other jurisdictions have held that state law designation of a foster parent as a public employee is not enough to establish state action. Again, the question here is whether foster parents act under color of New Mexico law, not the law of other states.

Under the NMTCA, the state pays any settlement or final judgment entered against a public employee for his or her violation of an individual's constitutional rights while acting within the scope of his or her duty.[2] Thus, as a public employee, a foster parent's unconstitutional acts are indemnified by the state. This District has noted that, as a result, "the conduct of a foster parent acting within the scope of [his] duty is that of 'a person for whom the state is responsible.'" *Johnson, et al v. Holmes, et al*, No. CIV-02-1239 JB/KBM, at *16 (D.N.M. filed Apr. 7, 2004) (unpublished) (citing *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996)). "Thus, a good case could be made that, under New Mexico law, the state has obligated itself to pay any damages [arising from] a foster parent's physical abuse of a foster child . . . [resulting] in a constitutional violation, by virtue of the foster parent's public employment." *Id*. This is not to say that New Mexico's designation of foster parents as public employees definitively decides the question of whether foster parents act under color of New Mexico state law for purposes of § 1983. Nevertheless, the Court finds it a significant factor to consider.

---

[2] Specifically, the NMTCA provides:

> A governmental entity shall pay any settlement or any final judgment entered against a public employee for:

> a violation of . . . any rights, privileges, or immunities secured by the constitution and the laws of the United States . . . that occurred while the public employee was acting within the scope of his duty.

NMSA 1978 § 41-4-4(D)(2).

*b.  Caselaw Supports a Finding of State Action*

Judges in the District of New Mexico have found "a real nexus" between a foster

parent's misuse of state authority and the abuse of a child in his custody. *See Bailey*,

No. CIV 96-959 LH/DJS; *G.Z. v. Hagloff, et al*, No. CIV 96-1373 MV/WD (D.N.M. Dec. 8,

1998) (unpublished).[3] In *Bailey*, the question before the Court was whether foster

parents who had allegedly abused foster children placed in their care by the state were

acting under color of state law. There, United States District Judge C. LeRoy Hansen

considered the facts that the defendants were subject to extensive regulation by the

state and were considered public employees under the NMTCA. *Bailey*, No. CIV 96-959

LH/DJS, at *9–10. What Judge Hansen found most significant, however, was that the

state had retained custody of the plaintiff and had selected the defendants to take

physical custody of her and provide for her well-being against her will. *Id*. at *10. Based

on these considerations, the Court found that the plaintiff had alleged a "real nexus"

between the state-authority granted to the defendants and their alleged misconduct. *Id*.

at *11. Ultimately, the question rested on the fact that "[i]f the state had not placed [the

plaintiff] in the physical custody of [the defendants] and given [the defendants] the

authority they purportedly exercised as foster parents, [the plaintiff] would not have

suffered the horrific injuries alleged." *Id*.[4]

Similarly, in *G.Z.*, United States District Judge Martha Vazquez found a "real

nexus" between the state-authority vested in foster parents and the defendants' alleged

abuse of a foster child. Judge Vazquez also cited the extensive regulation and licensing

---

[3] A copy of this Order is filed in the record within *Plaintiffs' Notice of Supplemental Authority that Defendants Glascoe and Kirkpatrick Were State Actors*, (Doc. 20), filed on November 5, 2015.
[4] Judge Hansen revisited this issue in 2000 upon the foster parent defendant's motion for summary judgment, and affirmed his previous reasoning and ruling. *Bailey v. Pacheco, et al*, No. CIV 96-959 LH/DJS, at *2–3 (D.N.M. filed Apr. 6, 2000) (unpublished).

of foster parents by CYFD to support her finding. *G.Z.*, No. CIV 96-1373 MV/WD, at *9. Presented with the facts that "the molestation of [the plaintiff] was undertaken by a foster father, acting as an agent for the State in caring for [the plaintiff], during the . . . time that [the plaintiff] was placed in the home," Judge Vazquez found the nexus "to be clear." *Id.* at *10. In his capacity as a foster parent, the defendant "misused a power which he possessed by virtue of state law and made possible only because he was clothed with the authority of the law." *Id.*

The Court finds these analyses of whether foster parents act under the color of New Mexico law to be persuasive, and their facts to be nearly indistinguishable from the case at bar. The Court believes that the level of regulation over foster homes in New Mexico, the fact that foster parents are considered "public employees" in New Mexico, and the fact that J.F. was involuntarily in the custody of the state, which placed him in Defendant's home, support a finding of state action. Similar to both *Bailey* and *GZ*, but for the authority granted to Defendant by the state, Defendant would not have had access to J.F. or been able to exercise complete control over J.F.'s upbringing while in his custody. Without this authority, Defendant would not have been in a position to perpetrate the abuses alleged in the Complaint.

Indeed, the facts as alleged in the Complaint fall squarely within the limits of state action as articulated by this Circuit. Although the Tenth Circuit has not directly addressed this issue, it has found state action in similar circumstances. In *Milonas v. Williams*, the Court found that the owners and operators of the Provo Canyon School were acting under color of state law when implementing practices that had allegedly violated the plaintiffs' constitutional rights. 691 F.2d 931 (10th Cir. 1982). Despite the

fact that Provo Canyon School was a private school that was not owned or operated by the state, the *Milonas* Court based its holding on the fact that many of the students were placed at the school involuntarily by juvenile courts and other state agencies, detailed contracts were drawn up by the school administrators and agreed to by many local state school districts that placed the boys at the school, the state significantly funded tuition at the school, and there was extensive state regulation of the education program at the school. *Id.* at 939–40.

In addition, this Circuit has made clear that "[w]here the defendant's state-derived authority places the defendant in a position of power over the plaintiff . . . and the defendant uses that power to improperly facilitate and commit the alleged unconstitutional conduct, the act is performed under color of state law." *Pena v. Greffet*, 922 F. Supp. 2d 1187, 1234 (D.N.M. 2013) (citing *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1304–05 (10th Cir. 2001); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1174–75 (10th Cir. 1997)).

Defendant's arguments to the contrary are unavailing. Defendant cites to *Jojola*, for the proposition that Defendant's sexual abuse of J.F. is not sanctioned by the state and is not conduct for which the state should be responsible. 55 F.3d 488. In *Jojola*, a school custodian led a student to a dark, vacant classroom during the school day and molested her. *Id.* at 490. There, the Court held that the plaintiff's complaint was deficient as to how the custodian used his state authority to molest the plaintiff, and found that the District Court correctly granted the defendant's motion to dismiss. *Id.* at 494. The Court noted that the complaint was devoid of any allegation that the custodian enticed the student into the classroom by using any state-granted authority and, as a result,

found that the complaint failed "to allege any facts purporting to establish the requisite nexus between [the janitor's] tortious conduct and the exercise of state authority." *Id.*

Here, the Complaint alleges facts which establish a nexus between Defendant's sexual abuse of J.F. and the exercise of state authority, as the acts are alleged to have occurred during the time that Defendant was licensed as a foster parent by the State of New Mexico, and during the time that the state placed J.F. in Defendant's home. Indeed, but for the State's licensing of Defendant as a foster parent, granting her the responsibility to act as its agent in the care of J.F., and placing J.F. in her home, Defendant would not have had access to J.F. in order to perpetrate the abuse. *See G.Z.*, No. CIV 96-1373 MV/WD, at *10. These circumstances demonstrate that Defendant misused a power which she possessed by virtue of state law and made possible only because she was clothed with the authority of that law. *Id.* (citing *West*, 487 U.S. at 49); *see Griffin*, 261 F.3d at 1304–05; *Whitney*, 113 F.3d at 1174–75 (10th Cir. 1997). Thus, the Court finds the facts here to be distinguishable from *Jojola*, and its underlying principles to support a finding of state action in this case.

Defendant also points to two other cases from this District in which judges have found that foster parents who allegedly abused foster children in their custody did not act under color of New Mexico state law. *See Barbara R. v. Couch*, Civ. No. 03-1225 MCA/WDS (D.N.M. Sept. 30, 2006) (unpublished); *MacNeilage v. Young*, No. CIV-07-841 RHS/WDS (D.N.M. May 19, 2009) (unpublished). While these cases may be more recent, neither acknowledges the rulings and analyses in *Bailey* and *G.Z.*, nor provides any analysis of New Mexico state law as it relates to the regulation and oversight of foster parents.

In fact, the Court in *MacNeilage*, while citing cases from several other jurisdictions on the issue, did not provide any analysis as to why foster parents cannot act under color of New Mexico state law. *MacNeilage*, No. CIV-07-841 RHS/WDS, at *7–8. Additionally, the arguments made by the parties in *Barbara R.* differ from those here. There, the plaintiffs had argued that foster parents satisfy the "public function" test for state action only by virtue of their classification as "public employees" in the NMTCA, and did not discuss other New Mexico law or the nexus between the defendant's conduct and the state. *Barbara R.*, No. 03-1225 MCA/WDS, at *18. Furthermore, the ruling in *Barbara R.* relied heavily on the Tenth Circuit's ruling in *Johnson v. Rodrigues*, 293 F.3d 1196 (10th Cir. 2002). The *Johnson* Court held that adoptive parents and an adoption agency could not be considered state actors where the only state involvement alleged in the complaint was the issuance of an adoption decree by a state court, and there were no other facts alleged with regard to the role the state of Utah played in the adoption. *Johnson*, 293 F.3d at 1202–05. Those are not the same arguments or facts presented here. As a result, this Court finds the analyses and final conclusions in *Bailey* and *G.Z.* to be more persuasive.

Furthermore, the cases cited by Defendant from outside this Circuit do not lead the Court to a different result. Those cases generally focus on the specific facts presented, including the relationship between the state social services agencies and the foster parents, and other facts not before this Court. *See e.g.*, *Milburn v. Ann Arundel County Dept. of Soc. Servs.*, 871 F.2d 474, 477 (4th Cir. 1989) (discussing applicable Maryland statutes, which provide only general guidelines for foster care and otherwise do not establish any kind of intimate relationship between the state and foster parents);

*Walker v. Johnson*, 891 F. Supp. 1040, 1051 (M.D. Pa. 1995) (holding that state licensing and reimbursement of foster parents alone does not render foster parents state actors under § 1983); *Hawley v. Nelson*, 968 F. Supp. 1372, 1388 (E.D. Mo. 1997) *aff'd,* 141 F.3d 1168 (8th Cir. 1998) (stating that the defendants, simply by virtue of being foster parents, did not act under color of state law, where there were no allegations regarding the relationship between the foster parents and the state); *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990) (assuming, without deciding, that foster parents are not state agents for constitutional purposes even if paid by the state); *Howard v. Malac*, 270 F. Supp. 2d 132, 143–45 (D. Mass. 2003) (stating that, in Massachusetts, foster parents are relatively independent in the conduct of their day-to-day affairs and are considered private families who are parental substitutes); *Marr ex rel. Marr v. Schofield*, 307 F. Supp. 2d 130, 133–35 (D. Me. 2004) (holding that the fact that foster care in Maine is created by Maine statutes and regulations, foster parents receive payments from the state, and are governed by agency rules and regulations is not enough to render a foster parent a state actor without allegations that the state was a joint participant in the abuse) ; *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348–49 (11th Cir. 2001) (holding that Georgia's regulation of foster parents and the inclusion of foster parents as public employees under the Georgia Torts Claim Act insufficient to render foster parents state actors).

In sum, the Court concludes that, considering a foster parent's status under New Mexico law, New Mexico's extensive regulation of foster parents and foster homes, and the fact that the alleged abuse of J.F. would not have occurred but for Defendant's

misuse of a power she possessed by virtue of the state, the Complaint alleges sufficient facts to suggest that Defendant acted under color of state law.

### B. *Qualified Immunity*

As stated above, where a defendant raises the defense of qualified immunity, the court must determine whether the plaintiff has sufficiently alleged that: (1) the defendant's actions violated her constitutional or statutory rights; and (2) whether that right was clearly established at the time of the alleged misconduct. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

Defendant next argues that, even if this Court finds that Defendant acted under color of state law for purposes of § 1983, Defendant is entitled to qualified immunity. (Doc. 9 at 8). Because there is no Tenth Circuit precedent holding that foster parents in New Mexico are state actors under § 1983, Defendant contends that she could not have violated clearly established statutory or constitutional rights of which a reasonable person would have known. (*Id.* at 8–9). Thus, Defendant is entitled to qualified immunity.

Plaintiff responds that the question of whether foster parents can be considered state actors under § 1983 is irrelevant to the question of whether Defendant violated J.F.'s clearly established constitutional right. (Doc. 14 at 7–9). Since the Tenth Circuit has held that children in foster care have a substantive due process right to be reasonably safe from harm by state officials, Plaintiff argues that Defendant violated J.F.'s clearly established constitutional right, and therefore is not entitled to qualified immunity. (*Id.* at 8–9).

Here, the parties do not dispute that, in this Circuit, "[c]hildren in foster care have a substantive due process right under the Fourteenth Amendment to be reasonably safe from harm by state officials." *Whitley v. New Mexico Children, Youth & Families Dep't*, 184 F. Supp. 2d 1146, 1155 (D.N.M. 2001) (citing *Yvonne L., By and Through Lewis v. New Mexico Dep't of Human Servs.,* 959 F.2d 883, 893–94 (10th Cir.1992)). Thus, the Court will only address the second prong of the qualified immunity analysis—whether J.F.'s right to be free from harm while in foster care was clearly established at the time of Defendant's allegedly unlawful conduct.

A right is clearly established if "the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right." *Martinez*, 2012 WL 2175772, at *21 (citing *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (internal citations omitted). However, "[t]his generality does not mean that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.'" *Schwartz v. Booker*, 702 F.3d 573, 588 (10th Cir. 2012) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "Rather, the 'contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citing *Anderson*, 483 U.S. at 640).

Here, Defendant contends that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001); (Doc. 19 at 11). Defendant maintains that, because the law is unclear as to whether Defendant is a state actor whose conduct may be actionable under § 1983, it would not be clear to a reasonable person in Defendant's position that her conduct violated J.F.'s rights under the Fourteenth Amendment. (Doc. 19 at 11). Plaintiffs, on the other hand, argue that the Court's analysis of whether Defendant violated J.F.'s clearly established constitutional right involves determining whether the right itself is clearly established, not whether Defendant could be considered a state actor. (Doc. 14 at 8–9). Neither party provides any authority, persuasive or binding, in support of their position on this specific issue.

However, the Court has found a published Tenth Circuit decision which suggests that the dispositive question with regard to whether J.F.'s right was clearly established is whether it would be clear to a reasonable person in Defendant's position that her conduct violated the Fourteenth Amendment and was actionable under § 1983. In *Johnson v. Martin*, the Court decided whether the defendant was entitled to qualified immunity where a public employee used governmental authority to sexually harass a nonemployee. 195 F.3d 1208 (10th Cir. 1999). Similar to the case at bar, the defendant there argued that the law was not clearly established as to whether a public employee acted under color of state law when he used governmental authority to sexually harass a nonemployee until the Tenth Circuit decided *Whitney v. State of New Mexico*, 113 F.3d 1170 (10th Cir. 1997). The *Whitney* Court held, for the first time in this Circuit, that

a public employee acted under color of state law when he sexually harassed a nonemployee while he was deciding whether to grant the nonemployee a state license to operate a day care. 113 F.3d at 1172, 1174. Thus, the defendant in *Johnson* argued that, because the allegedly unlawful conduct occurred before *Whitney* was decided, he was not on notice that his conduct was actionable under § 1983. Nevertheless, the *Johnson* Court found that, given the Circuits' jurisprudence regarding sexual harassment in the workplace, "a public official's reasonable application of prevailing law would lead him to conclude that to abuse any one of a number of kinds of authority for purpose of one's own sexual gratification . . . would violate the Equal Protection Clause." *Johnson*, 195 F.3d at 1218.

By virtue of the Court's reasoning in *Johnson*, this Court finds the relevant inquiry as to whether a right is clearly established to include whether a reasonable state actor would have had notice that her conduct violated J.F.'s constitutional right, and that she could be held liable for her conduct under § 1983.  With this guidance, the Court now turns to whether a reasonable person in Defendant's position would have had notice that her alleged abuse of J.F. violated his substantive right to due process under the Fourteenth Amendment, i.e., whether it was clear that Defendant could be held liable for her actions under § 1983 as a state actor.

As discussed above, Plaintiffs have not provided, and the Court has not found, a Supreme Court or Tenth Circuit case holding that foster parents may act under color of state law for purposes of § 1983. In addition, there is no case from which it is obvious that, given foster parents' relationship with the state, they may act under color of New Mexico law. Indeed, relying on Tenth Circuit jurisprudence, judges in the District of New

Mexico have come to varying conclusions as to whether a foster parent is a state actor in New Mexico. *See* discussion *supra* pp. 15–16; *Bailey*, No. CIV 96-959 LH/DJS; *G.Z.*, No. CIV 96-1373 MV/WD; *Barbara R.*, Civ. No. 03-1225 MCA/WDS; *MacNeilage*, No. CIV-07-841 RHS/WDS.

While the Court is mindful that it is not necessary that a case present "the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct," *Johnson*, 195 F.3d at 1216, the Court does not believe that the law regarding foster parents acting as state actors in this Circuit was clearly established at the time of Defendant's unlawful conduct. Given that the Tenth Circuit has not engaged in an analysis of the nexus between foster parents and the State of New Mexico, the Court cannot say that there is a Tenth Circuit case which provided Defendant with notice that her conduct violated the Fourteenth Amendment, and that she could be held liable for that conduct under § 1983.

In addition, Plaintiffs have not pointed to cases from other jurisdictions indicating that the clearly established weight of authority from other courts has found the law to be as they maintain. As Defendant points out, and as is detailed in this opinion, the weight of authority from other circuits finds that foster parents do not act under color of their state's law for purposes of § 1983. Thus, the Court finds that, based on the allegations in the Complaint, Plaintiffs have not met their burden of showing that a reasonable person in Defendant's position would have understood her conduct to be in violation of and actionable under the Fourteenth Amendment and federal law. Accordingly, Defendant is entitled to qualified immunity as to Plaintiffs' § 1983 claims against her.

### C. *Plaintiffs' State Law Claims under the NMTCA*

Finally, Defendant argues that Plaintiffs' state negligence claims for failure to warn J.F. of, and protect him from, the dangers in the Glascoe foster home also fail. (Doc. 9 at 10). Defendant contends that Defendant, as a public employee acting within the scope of her duties as a foster parent, is immune from liability under the NMTCA. (*Id.*). Defendant maintains that none of the enumerated waivers to immunity apply to Defendant in this case, and therefore Plaintiffs' negligence claims should be dismissed. (*Id.*).

Plaintiffs respond that this exact issue has already been decided by the State District Court prior to the removal of this case, and, there, the court found that Defendant had waived her immunity under the NMTCA. (Doc. 14 at 9–10). Plaintiffs argue that, pursuant to the law of the case doctrine, the Court is precluded from reconsidering the question of waiver of immunity under the NMTCA. (*Id.* at 10).

Defendant replies that the State District Court only ruled on the issue of waiver of immunity as to Defendant CYFD, and did not make a ruling as to Defendant. (Doc. 19 at 11–12). Defendant argues that, as a result, the law of the case doctrine does not apply, and the Court should consider the issue as it is presented here. (*Id.* at 12).

"'[T]he law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Kennedy v. Lubar*, 273 F.3d 1293, 1298 (10th Cir. 2001) (citing *McIlravy v. Kerr–McGee Coal Corp.,* 204 F.3d 1031, 1034 (10th Cir.2000)). "The doctrine of law of the case comes into play only with respect to issues previously determined." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) (citing *Quern*

*v. Jordan*, 440 U.S. 332, 348 (1979)) (internal quotations omitted). In addition, "law of the case principles are not absolute." *Kennedy*, 273 F.3d at 1299. The doctrine "is solely a rule of practice and not a limit on the power of the court," and a court may reconsider an issue despite a previous ruling. *Mason*, 948 F.2d at 1553; *see Kennedy*, 273 F.3d at 1299.

Here, Plaintiffs have provided an order from the State District Court granting Plaintiffs' motion for partial summary judgment and ruling that the defendants in this case have waived governmental immunity as to Plaintiffs' claims against them. (Doc. 14-1). However, upon review, this order only grants Plaintiffs' motion as to Defendant CYFD. Indeed, nowhere in the opinion does the court refer to or engage in any analysis as to Defendant Kirkpatrick's waiver of immunity. (*See* Doc. 14-1 at 3, 5 ("In this Case Plaintiffs allege their claims against CYFD are not barred by the tort claims [ ]act." "Plaintiffs must be permitted to proceed on the merits of their claim that CYFD operated the Glascoe foster home within the meaning of Section 41-4-6 immunity waiver.")). Because it appears that the state court has not determined the issue of immunity waiver under the NMTCA as to Defendant, the law of the case doctrine does not apply. *See Mason*, 948 F.2d at 1553. Accordingly, the Court will now turn to the substantive question of immunity under the NMTCA.

Plaintiffs' Complaint alleges claims of negligence against Defendant in her official capacity. (Doc. 1-1 at 2, 9–10). Specifically, Plaintiffs allege that Defendant negligently failed to warn J.F. of, and protect him from, the dangers present in the Glascoe home. (*Id.* at 84–85). Plaintiffs further allege that Defendant has waived immunity for these claims. (*Id.* at 85).

Under the NMTCA, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived  . . . by Sections 41-4-5 through 41-4-12 NMSA 1978." NMSA 1978 § 41-4-4. It is undisputed that Defendant, as a foster parent, is a public employee, *see* NMSA 1978 § 41-4-3(F)(4), and that she was acting within the scope of her duties as a foster parent at all times relevant to Plaintiffs' claims. (Doc. 9 at 10). Thus, the issue becomes whether Defendant's immunity from suit was waived under one of the enumerated statutory exceptions.

New Mexico state courts have already considered this question in similar circumstances, and have held that public employees in the foster care system may waive immunity under the NMTCA's "building waiver" exception. *See Young v. Van Duyne*, 135 N.M. 695 (N.M. Ct. App. 2004). The "building waiver" exception provides that public employees are not immune from "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building . . . ." NMSA 1978 § 41-4-6. Noting that New Mexico plays an extensive role in regulating foster homes, which may amount to control over the foster home, the New Mexico Court of Appeals has found that  the "building waiver" exception applied where the state placed an extremely violent young man in a foster home and the young man killed one of the foster parents. *Young*, 135 N.M. at 702. The Court reasoned that, given the statutes and regulations controlling the day-to-day operation of foster homes, the State could be said to operate and maintain a building as contemplated in § 41-4-6. *Id.*

The Tenth Circuit has described the holding in *Young* to be limited to its "highly unusual facts," and has stated that it is "not persuaded that New Mexico precedent treats everything that happens within a foster home as within the building waiver exception." *Johnson ex rel. Estate of Cano*, 455 F.3d at 1140. Acknowledging this; however, this Court believes that the claims against Defendant fall squarely within the building waiver exception as articulated by the *Young* court. Indeed, CYFD's regulatory scheme can be construed to consist of supervision of day-to-day operation, and regulates what is alleged to have caused the injuries in the Complaint. *Young*, 135 N.M. at 702 (citing *M.D.R. v. State ex rel. Human Servs. Dep't,* 114 N.M. 187, 192 (N.M. Ct. App. 1992) (Minzner, J., concurring)). New Mexico regulations govern and impose a duty on foster parents to maintain the physical structure of the foster home, *see* NMAC § 8.26.4.13, and the responsibility of providing for the safety and well-being of children in their care. *Id.* at § 8.26.2.12(A). In addition to complying with all CYFD policies, foster parents are specifically required to immediately report any signs, symptoms, indications or risk of abuse or neglect to any child. *Id.* at § 8.26.2.12(O). Furthermore, the conduct alleged to have caused J.F.'s injuries extends beyond an isolated placement of J.F. in the Glascoe home, as was found to fall within the building waiver in *Young*, to the day-to-day events that occurred within the foster home, allegedly due to Defendant's negligence.

In sum, the Court finds that Defendant operated and maintained the Glascoe foster home within the meaning of the building exception waiver. Defendant has not provided any argument or authority suggesting this Court should find otherwise. As a

result, Defendant has waived immunity under the NMTCA, and Plaintiffs may proceed to the merits of their negligence claims against her.

## IV.    Conclusion

For the reasons discussed above, the Court finds that, taking all of Plaintiffs' allegations as true, Plaintiffs have established a real nexus between the authority CYFD granted Defendant as foster parent, and the constitutional violations Defendant is alleged to have committed. Thus, the Court concludes that Defendant was acting under color of state law when she allegedly caused the injuries suffered by J.F. In addition, the Court concludes that, based on the allegations in the Complaint, Plaintiffs have not met their burden of showing that a reasonable person in Defendant's position would have understood her conduct to be in violation of and actionable under the Fourteenth Amendment and federal law. Accordingly, Defendant is entitled to qualified immunity as to Plaintiffs' § 1983 claims against her. Finally, because Defendant has waived her immunity under the building waiver exception, Plaintiffs may proceed with their claims against her under the NMTCA.

**IT IS THEREFORE ORDERED** that:

(1)  Defendant Jodi L. Kirkpatrick's *Motion to Dismiss Plaintiffs' First Amended Complaint for Damages and Memorandum in Support Thereof*, (Doc. 9), be **GRANTED IN PART** and **DENIED IN PART**;

(2) Defendant is entitled to qualified immunity on Plaintiffs' constitutional claims, and that Plaintiffs' claims against her under § 1983 be **DISMISSED WITH PREJUDICE**; and

(3) Defendant has waived her immunity from liability as to Plaintiffs' state

tort claims, and that Plaintiffs may proceed on their claims against her

under the NMTCA.


_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE